**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHARLES BRENT, *et al.* | : |
| Plaintiffs | : |
| v | : |
| WARDEN ROBERT KUPEC, *et al.* | : |
| Defendants | : |

Civil Action No.: WMN-04-2030
Consolidated Cases: WMN-04-2028;
RDB-04-2066; WMN-04-2029;
AW-04-2222; and AW-04-2293

oOo

**MEMORANDUM**

The above-captioned civil rights cases were filed by inmates who are incarcerated at Eastern Correctional Institution and concerns their allegations that conditions at the prison violate their constitutional rights. The separate complaints were consolidated by this court on November 30, 2004. Paper No. 19.[1] The consolidated complaint contained 165 separate allegations, limited by this court to four issues. *Id.* Now pending is Defendants' Motion for Summary Judgment. Paper No. 39. Plaintiffs have filed opposition responses to the motion which is now ripe for this court's consideration. Upon review of the papers filed this court finds that a hearing in this matter is not necessary. *See* Local Rule 105.6

Also pending in this case is Plaintiff Gant's Motion to Withdraw (Paper No. 50), which has been opposed by Defendants (Paper No. 51). Plaintiff does not provide this court with any basis for his withdrawal from this case. Defendants assert that they have expended considerable resources responding to the allegations raised in the complaint and that permitting Plaintiff to

---

[1] The cases consolidated by this court are: *Johnson v. Kupec, et al.* Civil Action No.: WMN-04-2028; *Lovell v. Kupec, et al.*, Civil Action No.: RDB-04-2066; *Fisher v. Kupec, et al.*, Civil Action No. WMN-04-2029; *Brent v. Kupec, et al.*, Civil Action No. WMN-04-2030; *Arey v. Kupec, et al.*, Civil Action No. AW-04-2222; and *Gant v. Kupec, et al.*, Civil Action No. AW-04-2293. All references to court documents pertain to documents filed in the lead consolidated case, civil action number WMN-04-2030.

SCANNED

withdraw from the case at this stage would frustrate those expenditures.  Plaintiff Gant's Motion

shall be denied for the reasons cited by Defendants.

**Background**

The issues raised in the complaint were limited by this court to allegations that: due to

overcrowding there is an unconstitutional level of violence existing within the prison; there is a

lack of constitutionally adequate medical care;  there is a practice of retaliating against inmates

who file litigation against prison officials; and the library facilities are constitutionally inadequate

and deny prisoners meaningful access to the courts. Paper No. 19.  As relief, Plaintiffs are

seeking a consent decree that corrects the alleged constitutional infirmities and permanently

governs the conditions at ECI.

**Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as

to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that

properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see

also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v.

Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979);  *Stevens v. Howard D. Johnson Co.*, 181

F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no

genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing

*Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

2

When ruling on a motion for summary judgment, the court must draw all reasonable

inferences in favor of and construe the facts in the light most favorable to the non-moving party.

*See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the

burden of proof on a particular claim must factually support each element of his or her claim.

"[A] complete failure of proof concerning an essential element . . . necessarily renders all other

facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving

party will have the burden of proof, it is his or her responsibility to confront the motion for

summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear
> the burden of proof at trial on a dispositive issue, a summary
> judgment motion may properly be made in reliance solely on the
> "pleadings, depositions, answers to interrogatories, and admissions
> on file."  Such a motion, whether or not accompanied by affidavits,
> will be "made and supported as provided in this rule," and Rule
> 56(e) therefore requires the nonmoving party to go beyond the
> pleadings and by her own affidavits, or by the "depositions,
> answers to interrogatories, and admissions on file," designate
> "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact

issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v.*

*North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.

1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party.  If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

**Analysis**

Violence Due to Overcrowding

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). Conditions which are merely restrictive or even harsh, however, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiffs claim that the totality of the conditions they describe has caused ECI to be on "eminent riot status." Paper No. 1 at p. 31. In addition, they claim that the practice of double-celling inmates who are psychotic or are troublemakers creates the possibility of violence. Paper No. 1 at p. 3. The complaint offers no specific examples of violent assaults taking place at ECI,

nor do any of the individual Plaintiffs claim that they have been assaulted.[2]

In response in opposition to Defendants' Motion for Summary Judgment, Plaintiff Arey claims that the number of assaults occurring between inmates at ECI has not decreased as alleged by Defendants.[3]  Paper No. 43 at p. 7.  He attributes the decrease in the number of reported assaults to a change of policy by correctional officials at ECI.  *Id.*  He claims that most inmate on inmate assaults go unreported and officers permit the combatants to finish the affray, rather than intervene.  *Id.*  Plaintiff asserts that the more relevant statistic is the number of assaults committed against correctional officers by inmates.  *Id.*  He claims that this is a more accurate reflection of the violence because every such incident is reported.  *Id.*

As disturbing as it may be for prisoners to witness those in authority being assaulted, violent acts committed against correctional officers simply are not actionable as an Eighth Amendment claim.  There is no cognizable  injury to Plaintiffs resulting from an increase in inmate-on-officer assaults.  To the extent that the violent acts committed against correctional officers leads to a conclusion that assaults also occur among inmates at ECI, the fact remains that none of the Plaintiffs have suffered a resulting injury.  Absent evidence that Plaintiffs have been harmed, the claim must fail.

Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue

---

[2] To the extent that Plaintiffs allege that forced idleness caused by overcrowding has caused an increased opportunity for violence to occur, Defendants state, under oath, that there has been an increase in inmate job opportunities at ECI.  Paper No. 39 at Ex. 2, p. 4.

[3] Defendants assert that the level of violence at ECI has decreased from 286 guilty findings of inmate on inmate assault in fiscal year 2003 to 238 guilty findings in fiscal year 2004.  Paper No. 39 at p. 6 and Ex. 3.

of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th

Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth

Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the

defendants or their failure to act amounted to deliberate indifference to a serious medical need.

*See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need

requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need

and that, subjectively, the prison staff were aware of the need for medical attention but failed to

either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825,

837 (1994).

Plaintiffs allege that they are forced to pay co-pays in order to receive medical care and

that medical personnel with abrasive personalities are employed for the purpose of discouraging

inmates from attending sick call.  Paper No. 1 at p. 9.  They further allege that in order to obtain

dental services, excessive waiting periods are required.  *Id*.  They claim that the lack of a "fast

response team" to treat life-threatening injuries is unconstitutional.  *Id*.   In addition they claim

that assignment to the special needs housing unit is not based on medical assessment and that the

housing unit designed for elderly or infirm inmates is inadequate.  *Id*.

In support of their Motion for Summary Judgment, Defendants submit an affidavit from

Donna Plante, Director of Nursing for ECI.  Paper No. 39 at Ex. 7.  The medical staff at ECI

consists of two physicians, two physician assistants, and thirty-one nurses.  *Id*. at p. 2.  There is a

full-time physician at ECI during daytime hours and one who is on-call 24 hours a day, seven

days a week. *Id.* The response time for medical emergencies occurring within ECI is four minutes or less. *Id.* If there is a need to transport an inmate to a hospital, they are sent by ambulance to the Peninsula Regional Medical Center, 25 minutes away. *Id.*

Dental services include an initial screening within 60 days of arriving at ECI and 60 hours of on-site dental care per month. *Id.* In addition, an oral surgeon comes to the prison one day a month. *Id.*

Four times a month an optician comes to the prison to provide care to inmates requiring glasses, which are provided free of charge. *Id.* In the event that an inmate requires the services of an ophthalmologist, he is sent to one outside of the prison. *Id.*

The medical equipment available at the prison includes x-ray equipment, a defibrillitor, an EKG, a nebulizer, a pulse oximeter, a blood pressure machine, a centrifuge, oxygen, crash carts, and wheelchairs. *Id* at p. 3. All major medications are available at the prison and, if necessary, medications can be ordered and transported to the prison. *Id.*

There is a 22 bed infirmary as well as a specialized smaller unit with 6 beds for inmates with special needs. *Id.* Inmates who are under the age of 50 receive an annual physical every four years at no charge; those 50 years or older receive a physical every year at no charge. *Id.* There is a two dollar co-pay charged for sick call requests which is waived if the inmate can not afford it. *Id.* at p. 4. No co-pay is charged if the request relates to a chronic disorder, a follow-up visit, or for medication refills. *Id.* Inmates who are suffering from chronic conditions such as HIV, hepatitis, diabetes, seizure disorders, asthma, or hypertension are seen by medical staff a minimum of every three months. *Id.*

Prescribed medications are dispensed either by requiring the inmates to come to the

7

medical unit dispensary during "pill-call," or the medication is given to the inmate to take back to his cell. *Id.* The medications dispensed at pill-call include those used to treat psychiatric conditions, HIV, controlled narcotics, and those administered by syringe. *Id.* Inmates taking numerous medications and those who have compliance issues are also required to attend pill-call to receive their medication. *Id.* Inmates on segregation or who have special needs have their medications brought to them. *Id.*

In response to the Motion for Summary Judgment, Plaintiff Arey asserts that he has not had his teeth cleaned by a dentist in fifteen years; that he has been required to wait several months to see a dentist to have a filling repaired; and that even though he is over 50 years old he has not yet had a physical. Paper No. 43 at pp. 4 and 9. While these deficiencies, if true, will require redress by Defendants, neither Arey nor Brent claim actual injury as a result of these alleged delays in delivery of health care.   In his response in opposition, Plaintiff Brent asserts that the medical care system is grossly inadequate and that the Division of Correction itself found the services to be inadequate, prompting replacement of the providers effective July 1, 2005. Paper No. 44 at p. 33.  No other Plaintiff has submitted an affidavit or other evidence showing a serious medical need which has been ignored or otherwise improperly treated by medical staff. The generalized claims that medical care should be improved and the assertions that care for non-serious medical needs is delayed are insufficient to state an Eighth Amendment claim.  There has been no discernible injury claimed, thus Defendants are entitled to summary judgment on this claim.

### Psychiatric Care

There is no underlying distinction between the right to medical care for physical ills and

its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon care considered merely desirable. *Id.* at 48.

Plaintiffs claim that inmates are rarely given proper mental health care treatment, but are instead excessively medicated with psychotropic medication or heavily sedated. Paper No. 1 at p. 12. They further claim that there is no crisis intervention available for inmates and that inmates are not properly counseled through establishment of programs designed to teach them how to cope with incarceration. *Id.* at pp. 12 – 13.

Defendants explain that ECI has two psychiatrists on staff. Paper No. 39 at Ex. 7, p. 2. There is a psychiatrist on call for the prison 24 hours a day, seven days a week. *Id.* In addition, psychiatric medication is available at the prison. *Id.*

None of the Plaintiffs has claimed that they suffer from a serious psychiatric condition that has been left untreated. The only claims raised are general allegations that there are inmates at the prison who need psychiatric care, but are not receiving it. Plaintiffs do not provide affidavits from inmates alleging that lack of care, nor do they forecast evidence which would establish the existence of a systemic problem in the treatment or care of inmates suffering from serious mental illness. To the extent that many of the claims raised in the complaint suggest that

the overall conditions of the prison are depressing, that allegation is insufficient to establish a claim of deliberate indifference to a serious psychiatric need.  Moreover, the alleged failure to provide guidance to inmates regarding how to cope with incarceration does not constitute deliberate indifference to a serious psychiatric need.  Defendants are entitled to summary judgment in their favor on this claim.

Retaliation

In order to prevail on a claim of retaliation,  Plaintiff  "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment.  *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim).  "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'"  *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Defendants have submitted prison records regarding job assignments and institutional infractions as they pertain to Plaintiffs.  Paper No. 39 at Ex. 6.  They point out that although Plaintiff Brent has filed numerous actions in this court in the past three years, there were no adverse actions taken with respect to his institutional job assignments, nor were disciplinary

measures taken in close proximity to the filing of those actions. *Id*. With regard to the remaining

five plaintiffs, Defendants assert that there is no evidence of adverse actions taken against them

in retaliation for the instant action.[4] *Id*. at Ex. 5 and 6. All Plaintiffs, as of the filing of the

motion for summary judgment, were employed, and none has alleged adverse consequences

resulting from the filing of this action. Defendants have provided an affidavit from Security

Chief Ronald Dryden, who states that "there are checks and balances set up to prevent retaliation

by staff and to uncover retaliation if it does occur." *Id*. at Ex. 2, p.4.

    Indeed there is little evidence provided by Plaintiffs to support their claim that there is a

system of retaliatory measures designed to deter legal action in place at ECI. They claim that

honor tiers at ECI are reserved for those inmates who do not file litigation against ECI

personnel.[5] Paper No. 44 at p. 28. There is no claim, however, that any of the Plaintiffs were

considered and subsequently denied housing on the honor tier for the purpose of deterring

litigation.

    The conclusory allegation of retaliation is unsupported by the evidence. To the extent

---

[4] Brent received infractions on January 29, 2003, and January 15, 1999; Fisher received an infraction on February 26, 2003; Arey received an infraction on January 2, 2001; Johnson received an infraction on June 6, 2004; Lovell received an infraction on May 15, 2000; and Gant received an infraction on December 1, 2003. Paper No. 39 at Ex. 5. Each of the Plaintiffs is currently employed in prison jobs or isattending school. Brent has worked as a catalog clerk since October 29, 2004; Fisher has been a student since July 11, 2003; Arey has been a sanitation worker since June 22, 2003; Johnson has worked in the State Use Industry sewing shop since June 15, 2004; Lovell has worked in the State Use Industry sewing shop since May 12, 2004; and Gant has worked in the State Use Industry sewing shop since June 19, 2000. *Id*.

[5] Plaintiffs allege that money earmarked for the purchase and installation of a television antennae for the prison has been misappropriated. Paper No. 44 at p. 28. They further claim that even if the promised television antennae is installed, officials have stated that it will only be installed on honor tiers. *Id*. To the extent that there has been, or will be, some benefit conferred on inmates who have achieved honor status, there arises no federal cause of action on behalf of those who do not receive that benefit. This is especially true where, as here, the benefit is one that is not constitutionally mandated.

that correctional officials knew about the instant case and made comments about the claims raised, there is no evidence the alleged conduct caused any party the adversity necessary to sustain a constitutional claim of retaliation.   Accordingly, Defendants are entitled to summary judgment on the claim.

Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355.  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

Plaintiffs claim that the library is inadequate for researching legal issues. Paper No. 1 at pp. 10– 11.  The inadequacies cited in the complaint pertaining to access to legal materials are:

12

the legal books are outdated and obsolete; current law is available only on compact disk which may be accessed only after the librarian keys in the password; staff refuse to hire inmates knowledgeable in the law as aids; the computerized legal research service was allowed to expire; and the staff are uncomfortable with technology. *Id.* In addition, Plaintiffs include the broad claim that the library "does not meet the standards for a law library set forth in 'Prisoners Self-Help Litigation Manual' published by Oceana Press" and that there are no books on tape provided for visually impaired or illiterate inmates. *Id.*

Plaintiff Arey asserts that he has a pending federal habeas corpus petition[6] and he cannot adequately research the issues pending in that case due to lack of access to the library and the lack of adequate legal materials therein. Paper No. 43. He claims that the library is often closed on the one day designated for his housing unit to use the library. *Id.* In his pending habeas action, however, Arey alleged he was unable to file an adequate reply to the answer because he was not permitted access to his legal materials which were being stored in the prison property room. *Arey v. State of Maryland*, Civil Action No. AW-05-637, Paper No. 6. He sought, and was granted, an extension of time in which to file the reply so that he could access his legal materials. *Id.* at Paper No. 7. Subsequently, he filed a motion to amend the petition which is currently pending. *Id.* at Paper No. 9. There is no allegation in that case that lack of access to the books enumerated in Arey's opposition [7] has handicapped his ability to respond to the

---

[6] *See Arey v. State of Maryland*, Civil Action No. AW-05-637 (D. Md. 2005).

[7] Arey references the following books, which he claims are only available at the Maryland House of Correction, as vital materials: *Federal Habeas Corpus Practice and Procedure; Ineffective Assistance of Counsel; Maryland Criminal Jury Instruction and Commentary; Maryland Criminal Pattern Jury Instructions; Maryland Criminal Procedure Forms and Analysis; Maryland Evidence Handbook; Maryland Trial Judges Bench Book;* and *Pretrial Motions in Criminal Prosecutions.*

substantive issues raised in his pending habeas case. Additionally, there has been no showing that Arey has missed a deadline or has lost a meritorious claim as a result of the unavailability of certain legal books. Moreover, the list of resources provided by Defendants that are available to inmates at ECI cover the same topics as the books enumerated by Arey. *See* Paper No. 39 at Ex. 9 and 10. In addition, the library materials are not the only resource available to prisoners who wish to raise a claim under 42 U.S.C. §1983. The Department of Public Safety & Correctional Services has contracted with Prisoner Rights Information Services Management, Inc. ("PRISM"),[8] to provide legal advice and/or representation to prisoners concerning their constitutional rights while in prison. Also available to Plaintiffs is the Library Assistance to State Institutions (LASI) program which provides copies of published decisions to prisoners. To receive a copy of a decision, the prisoner must submit a request slip containing the case title and citation through the institutional librarian, and the requested case is delivered to the inmate's cell. Paper No. 39 at Ex. 8.

The assertion that the library is frequently closed on Mondays, the day designated for library use by Plaintiffs' housing unit, is also unavailing. First, there are resources available to inmates, such as LASI and PRISM, that do not require a trip to the library. Plaintiff Arey claims that PRISM is ineffective because they have not provided representation in this particular case. Providing an attorney to represent inmates in every case, however, is not required by the

---

[8] This contract was previously held by the Prisoner Assistance Project of the Legal Aid Bureau, Inc. This Court has found that the combination of services provided to Division of Correction prisoners through this contract, the Office of the Public Defender and LASI is sufficient to ensure their right of access to the courts. *See Hall v. Maryland*, 433 F. Supp. 756 (D. Md. 1977), *aff'd in part, vacated and remanded in part, Carter v. Mandel*, 573 F.2d 172 (4th Cir. 1978), *on remand, Carter v. Kamka*, 515 F. Supp. 825 (D. Md. 1980), *declining to expand,* 932 F. Supp. 122 (D. Md. 1996).

constitution. Secondly, none of the Plaintiffs have alleged an actual injury resulting from a missed opportunity to go to the library for research.

**Conclusion**

Plaintiffs claim that the overall conditions as they exist at ECI require this court's intervention through issuance of a consent decree requiring changes in prison policies, including requiring: 55 square feet of living space for each inmate; a population cap; provision of "adequate medical service"; changes to food service policies; and an increase in educational programs. Paper No. 44 at pp. 37– 38. Plaintiffs assert that the conditions at ECI have been permitted to deteriorate because there has never been a consent decree governing the prison.

The relief requested by Plaintiffs is unavailable based on the evidence submitted. This court is obliged to comply with the mandates of the Prisoner Litigation Reform Act (PLRA). Under 18 U.S.C. § 3626(a)(1):

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

Without evidence that there has been a violation of a Federal right, the prospective relief requested by Plaintiffs may not be lawfully ordered. To the extent that Plaintiffs have attempted to assert claims on behalf of other unnamed prisoners at ECI who may have suffered a constitutional rights violation, their efforts must fail.[9]  Narrowly drawn prospective relief does

---

[9] Even if this court had certified the instant case as a class action, Fed. R. Civ. Proc. 23(a)(3) requires the claims and defenses of the representative parties to be typical of the claims or defenses of the

not encompass correction of unknown rights violations of unknown prisoners. *See Morales-Feliciano v. Rullan*, 378 F. 3d 42, 54 (1ˢᵗ Cir. 2004) (constitutional violations regarding medical care, substantial in scope and degree which defied remedial attempts for two decades justified prospective relief ordered by district court); *Hadix v. Johnson*, 367 F. 3d 513, 529 (6ᵗʰ Cir. 2004) (district court's issuance of a "laundry list"of deficiencies that required repair without a finding of an Eighth Amendment violation is error); *but see Jones-El v. Berge*, 374 F. 3d 541, 544 (7ᵗʰ Cir. 2004) (enforcement of valid consent decree is not prospective relief as contemplated by the PLRA).  While Plaintiffs' claims are descriptive of uncomfortable and inconvenient conditions of confinement, they fall far short of cruel and unusual conditions of confinement required for a finding of an Eighth Amendment violation.

Accordingly, the Motion for Summary Judgment shall be granted by separate Order which follows.

_____9/12/05_____
Date

_____
William M. Nickerson
Senior United States District Judge

---

class.  The representative plaintiffs in this case have not presented any evidence that the alleged deficiencies at ECI violated their federal rights.  *See e.g., Shook v. El Paso County*, 386 F. 3d 963, 966–67 (10ᵗʰ Cir. 2004) (involving former jail inmates each of whom suffered mental illness and alleged denial of proper psychiatric care due to systemic inadequacies).  Such class certification, of course, would mandate the appointment of counsel. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4ᵗʰ Cir. 1975).